## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CITADEL RECOVERY SERVICES, LLC**                    **CIVIL ACTION**

**VERSUS**                    **NO. 19-12271**

**T.J. SUTTON ENTERPRISES, LLC**                    **SECTION: "G"(4)**

### ORDER AND REASONS

In this litigation, Plaintiff Citadel Recovery Services, LLC ("Plaintiff") alleges Defendant T.J. Sutton Enterprises, LLC ("Sutton") breached the parties' contract by filing construction liens on residential buildings in the United States Virgin Islands that were repaired pursuant to the contract.[1] Before the Court is Sutton's "Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue."[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the instant motion.

### I. Background

On August 22, 2019, Plaintiff filed a Complaint against Defendant Sutton in this Court.[3] According to the Complaint, the United States Virgin Islands suffered catastrophic damages from Hurricanes Irma and Maria in 2017.[4] Plaintiff alleges, as part of the recovery efforts, the Virgin Islands Housing Finance Authority ("VIHFA") contracted with prime contractor AECOM Carible, LLP ("AECOM") as part of the Emergency Home Repair Virgin Islands program, a

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 7

[3] Rec. Doc. 1.

[4] *Id.* at 1.

recovery program funded by the Federal Emergency Management Agency.[5]

AECOM subsequently contracted with Plaintiff ("Master Subcontract") as a subcontractor to help provide construction services in the recovery efforts.[6] Plaintiff, to satisfy its obligations to AECOM under the Master Subcontract, contracted with Sutton ("Subcontract") to help provide construction services for AECOM.[7] The Subcontract is allegedly a "pay when paid" contract.[8]

Sutton allegedly provided labor, materials, and equipment valued at $159,165.95 under the Subcontract.[9] Plaintiff asserts that it submitted invoices to AECOM for payment, which included invoices for all labor, materials, and equipment provided by Sutton.[10] According to the Complaint, Plaintiff has a "Subcontract Performance Bond" and "Subcontract Payment Bond" in place with Travelers Casualty and Surety Company of American in the amount of $10,000,000 to ensure payment to all subcontractors of Plaintiff, including Sutton.[11] Yet, because Sutton did not receive payment toward the $159,165.95, Sutton allegedly filed construction liens against repaired residential buildings in the Virgin Islands.[12] Plaintiff contends Sutton's construction liens violate both the Subcontract and Virgin Island lien law.[13]

On September 9, 2019, Sutton filed the instant motion to dismiss, arguing this Court does

---

[5] *Id.*

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 8.

[10] *Id.*

[11] *Id.* at 12.

[12] *Id.* at 9.

[13] *Id.* at 11–17.

not have personal jurisdiction over Sutton.[14] On September 17, 2019, Plaintiff filed an opposition to the instant motion.[15] On September 30, 2019, with leave of Court, Sutton filed a reply brief in further support of the motion.[16]

## II. Parties' Arguments

### A. *Sutton's Arguments in Support of the Motion to Dismiss*

Sutton makes two principal arguments in support of the instant motion.[17] Sutton first argues it is not subject to personal jurisdiction in Louisiana.[18] Next, Sutton argues that the Eastern District of Louisiana is an improper venue for Plaintiff's claims against Sutton.[19] The Court will summarize each argument in turn.

### 1. Whether Sutton is Subject to Personal Jurisdiction in Louisiana

Sutton argues that it has insufficient contacts with Louisiana to support the exercise of specific or general jurisdiction.[20] Sutton contends that general jurisdiction "arises when the nonresident's contacts with the forum are continuous and systematic."[21] The "continuous and systematic" standard requires an entity's contacts with a forum state to render that entity "at home" in the forum state.[22] Sutton argues Plaintiff cannot establish Sutton has continuous and

---

[14] Rec. Doc. 7.

[15] Rec. Doc. 8.

[16] Rec. Doc. 11.

[17] Rec. Doc. 7-1.

[18] *Id.* at 6–7.

[19] *Id.* at 13–14.

[20] *Id.* at 6–7.

[21] *Id.* at 6.

[22] *Id.* at 7.

systematic contacts with Louisiana because Sutton is a limited liability company organized under North Carolina law without any offices or employees in Louisiana.[23]

Sutton also argues that it has insufficient contacts with Louisiana to support the exercise of specific jurisdiction.[24] Sutton contends that specific jurisdiction arises when "the defendant purposefully avails himself of conducting activities in the forum state" and the "cause of action arises from or is related to those contacts or activities."[25] Sutton argues that standard is not satisfied here for Plaintiff's three causes of action against Sutton, which Plaintiff refers to as Count I, Count II, and Count III in the Complaint.[26] Sutton argues Count I alleges Sutton wrongfully filed liens in the Virgin Islands for construction work performed exclusively in the Virgin Islands.[27] Thus, Sutton argues Count I does not involve any contacts in Louisiana, and Plaintiff has not established that Sutton is subject to specific jurisdiction in Louisiana for the claims alleged in Count I.[28]

Sutton argues Count II seeks a declaratory ruling regarding rights and obligations under the Master Subcontract and Subcontract.[29] Sutton concedes that the Subcontract has a forum selection clause permitting venue and jurisdiction in the Eastern District of Louisiana.[30] But Sutton contends the forum selection clause governs disputes only concerning the Subcontract—not the

---

[23] *Id.* at 8.

[24] *Id.* at 9.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 10.

[29] *Id.*

[30] *Id.*

Master Subcontract—because the Master Subcontract itself has a forum selection clause requiring certain disputes to be litigated in the Virgin Islands or Virginia.[31] Thus, because Count II requests a declaratory ruling regarding rights and obligations under both the Master Subcontract *and* the Subcontract, Sutton concludes specific jurisdiction is not appropriate in Louisiana for Count II.[32]

Sutton argues Count III seeks injunctive relief because "the placement of liens in the Virgin Islands is damaging [Plaintiff's] reputation and goodwill."[33] Yet, according to Sutton, "there are no allegations that the cause of action arises from or is related to any contacts in Louisiana."[34] Therefore, Sutton concludes Plaintiff has not established that specific jurisdiction is appropriate in Louisiana for Count III.[35]

Finally, Sutton contends it would be unfair and unreasonable for this Court to exercise personal jurisdiction over Sutton.[36] Sutton points to multiple factors that weigh in favor of this Court declining to exercise personal jurisdiction over Sutton.[37] For example, Sutton contends it would be greatly burdened if forced to litigate in this Court because Sutton "has no offices in Louisiana, did not perform any work in Louisiana, and did not perfect any liens in Louisiana."[38] Sutton also contends Louisiana has no "interest in the outcome of this lawsuit" because the lawsuit

---

[31] *Id.* at 10–11.

[32] *Id.*

[33] *Id.* at 10.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 12.

[37] *Id.* at 13.

[38] *Id.*

"involves recovery work in the U.S. Virgin Islands."[39] Lastly, Sutton points out that "the witnesses and homeowners are present in [the Virgin Islands]."[40]

## 2. Whether Venue is Proper in the Eastern District of Louisiana

Sutton argues the Eastern District of Louisiana is an improper venue for Plaintiff's claims against Sutton.[41] Sutton contends venue is appropriate "in a district where any defendant resides or where a substantial part of the events or omissions giving rise to the claim occurred."[42] Sutton argues it does not reside in Louisiana and no event or omission in this matter occurred in Louisiana.[43] Sutton concedes that the Subcontract's forum selection clause includes a venue provision stating venue is proper in the Eastern District of Louisiana.[44] But Sutton argues Plaintiff's claims do not fall within the scope of the Subcontract's forum selection clause and, as a result, the Subcontract's venue provision is inapplicable to this case.[45]

## B. *Plaintiff's Opposition to the Motion to Dismiss*

Plaintiff makes two principal arguments in opposition to the instant motion. Plaintiff first argues this Court may exercise personal jurisdiction over Sutton because the Subcontract—signed by Plaintiff and Sutton—includes a valid and enforceable forum selection clause stating that Sutton submits to the jurisdiction of the Eastern District of Louisiana.[46] Next, Plaintiff argues

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at 13–14.

[42] *Id.*

[43] *Id.*

[44] *See id.* at 14.

[45] *Id.*

[46] Rec. Doc. 8 at 6.

venue is appropriate in this Court because that same forum selection clause states that Sutton submits to venue in the Eastern District of Louisiana.[47] The Court will summarize each argument in turn.

## 1. Whether Sutton is Subject to Personal Jurisdiction in Louisiana

Plaintiff points out that the Subcontract includes a forum selection clause that provides the following:

> This Agreement shall be governed by the law of the State of Louisiana. Subcontractor [Sutton] submits to the venue and jurisdiction of the Eastern District Court of Louisiana.[48]

Plaintiff argues the forum selection clause clearly and plainly articulates that Sutton, as the Subcontractor, submits to this Court's jurisdiction.[49] Plaintiff further argues that, when a forum selection clause's meaning is plain, as here, the clause is presumptively valid and enforceable unless enforcement of the clause would be "unreasonable."[50]

Plaintiff contends Sutton may prove that enforcement of the forum selection clause would be "unreasonable" only by establishing one of the following: "(1) the inclusion of the forum-selection clause into the written contract was the product of fraud or overreaching; (2) the party opposing enforcement of the clause will for all practical purposes be deprived of his day in court because of the extreme inconvenience or unfairness of the forum specified in the clause; (3) the law specified in the clause is fundamentally unfair and will cause plaintiff to be deprived of a remedy; or (4) enforcement of the clause would go against a strong public policy of the forum

---

[47] *Id.* at 19.

[48] Rec. Doc. 8 at 4.

[49] *Id.* at 8.

[50] *Id.* at 10.

state."[51]

First, Plaintiff argues Sutton does not allege fraud or overreaching by Plaintiff.[52] Second, Plaintiff argues requiring Sutton to litigate in Louisiana will not deprive Sutton of its day in court or a proper remedy.[53] Plaintiff points to Sutton promptly retaining legal counsel in Louisiana to defend against Plaintiff's claims.[54] Finally, Plaintiff argues Sutton does not explain how enforcing the clause would "go against a strong public policy" of Louisiana.[55] Plaintiff thus concludes enforcement of the Subcontract's forum selection clause would not be unreasonable.[56]

Next, Plaintiff argues the Subcontract's enforceable forum selection clause governs Plaintiff's three causes of action, which Plaintiff refers to as Count I, Count II, and Count III in the Complaint, because each count flows directly from the Subcontract.[57] According to Plaintiff, Count I alleges "Sutton's actions violate certain aspects of Virgin Island lien laws as they relate to Sutton's limitations under the *Subcontract*."[58] Plaintiff argues Count I concerns the Subcontract's lien limitations, flows directly from the Subcontract, and therefore falls within the Subcontract's forum selection clause.

Plaintiff argues Count II alleges "a genuine and bona fide dispute and an actual controversy

---

[51] *Id.* (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (internal quotations marks omitted)).

[52] *Id.* at 11.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 12.

[58] *Id.* at 13.

and disagreement [exists] between [Plaintiff] and Sutton regarding the payment terms under the *Subcontract* and the rights and remedies available, if any, to Sutton for nonpayment."[59] Plaintiff argues Count II concerns rights and remedies under the Subcontract, flows directly from the Subcontract, and therefore falls within the Subcontract's forum selection clause.[60]

Plaintiff argues Count III "seeks to enjoin Sutton from taking certain legal actions [that] are not permitted under the Subcontract."[61] As a result, Plaintiff argues Count III's request for injunctive relief flows directly from the Subcontract and therefore must fall within the Subcontract's forum selection clause.[62]

### 2. Whether Venue is Appropriate in the Eastern District of Louisiana

Plaintiff argues venue is appropriate in this Court because the Subcontract's forum selection clause states that Sutton "submits to the venue . . . of the Eastern District Court of Louisiana."[63] Plaintiff argues Counts I, II, and III are subject to the Subcontract's venue provision because each count is within the scope of the Subcontract's forum selection clause for the same reasons argued above in the personal jurisdiction subsection.[64]

### C. *Sutton's Reply to Plaintiff's Opposition*

In reply, Sutton further elaborates why it believes this Court lacks personal jurisdiction over it with respect to the claims raised in Counts I, Count II, and Count III.[65] According to Sutton,

---

[59] *Id.* (citing Rec. Doc. 1).

[60] *Id.*

[61] *Id.*

[62] *Id.* at 14–15.

[63] *See id.* at 19.

[64] *Id.*

[65] Rec. Doc. 11.

"[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."[66] Sutton argues Plaintiff cannot establish personal jurisdiction over Sutton for each claim because each claim does not involve sufficient contacts with Louisiana and each claim is not within the scope of the Subcontract's forum selection clause.[67]

Sutton argues Count I and Count III pertain to actions that occurred solely in the Virgin Islands and therefore do not involve sufficient contacts with Louisiana for this Court to exercise specific jurisdiction.[68] Sutton also argues Count I and Count III are not within the scope of the Subcontract's forum selection clause because the clause "does not state that TJ Sutton consents to venue and jurisdiction in this Court for any and all claims that may arise under the contract or the performance of work under the contract."[69] Put another way, Sutton argues Plaintiff is incorrectly interpreting the Subcontract's forum selection clause "to argue that personal jurisdiction lies in Louisiana for anything TJ Sutton did under the [Sub]contract."[70]

Next, Sutton argues Count II seeks relief under the Master Subcontract in addition to relief under the Subcontract.[71] The Master Subcontract itself allegedly includes a forum selection clause requiring disputes to be litigated in the Virgin Islands or Virginia.[72] According to Sutton, because the Subcontract adopts the Master Subcontract, Plaintiff is bound by the Master Subcontract's

---

[66] *Id.* at 1.

[67] *Id.* at 2.

[68] *Id.*

[69] *Id.* at 4.

[70] *Id.* at 3.

[71] *Id.*

[72] *Id.* at 4.

forum selection clause requiring disputes to be litigated in Virginia or the Virgin Islands.[73] Sutton concedes the Subcontract controls when in conflict with the Master Subcontract, but Sutton argues no conflict exists between the Subcontract's forum selection clause and the Master Subcontract's forum selection clause.[74] Sutton concludes that the Master Subcontract's forum selection clause controls in this case.

### III. Legal Standard

#### A. *Legal Standard on a Motion to Dismiss for Lack of Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a plaintiff's claims when the court does not have personal jurisdiction over a defendant. The party seeking to invoke the power of the court "bears the burden of establishing jurisdiction, but need only present prima facie evidence."[75] To determine whether a prima facie case exists, a district court accepts "uncontroverted allegations in the complaint" as true and resolves "any factual disputes" in favor of the party seeking to invoke the court's jurisdiction.[76] A district court has "considerable procedural leeway" on how it resolves a pretrial motion to dismiss for lack of personal jurisdiction.[77] Indeed, a district court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."[78]

---

[73] *Id.*

[74] *Id.* at 5.

[75] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (citations omitted).

[76] *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 176 (5th Cir. 2013) (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012)).

[77] *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (5th Cir. 1981).

[78] *Id.*

In diversity cases under 28 U.S.C. § 1332, "the exercise of personal jurisdiction over a non-resident defendant must comport with both federal constitutional due process requirements and the long-arm statute of the state in which the district court is located."[79] The Louisiana long-arm statute confers jurisdiction to the limits of due process.[80] Thus, because Louisiana's long-arm statute confers jurisdiction to the limits of due process, a federal court must determine only whether subjecting the defendant to suit in Louisiana comports with the Due Process Clause.[81]

Due process permits the exercise of personal jurisdiction over a nonresident defendant when (1) the defendant "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state"[82] and (2) the court's exercise of personal jurisdiction does not "offend traditional notions of fair play and substantial justice."[83] The "minimum contacts" analysis "may result in either specific or general jurisdiction."[84] "General jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and 'continuous and systematic' but unrelated to the instant cause of action."[85] On the other hand, specific jurisdiction may be asserted when the nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged

---

[79] *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013).

[80] La. Rev. Stat. § 13:3201.

[81] *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (noting that only the Due Process Clause analysis is necessary).

[82] *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

[83] *Pervasive Software, Inc. v. Lexware GmbH & Co. Kg.*, 688 F.3d 214, 220 (5th Cir. 2012).

[84] *Torgeson v. Nordisk Aviation Prod., Inc.*, 997 F.2d 881 (5th Cir. 1993).

[85] *Cent. Freight Lines*, 322 F.3d at 381.

injuries that arise out of or relate to those activities."[86]

## B. *Legal Standard on a Motion to Dismiss for Improper Venue*

A motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) requires a district court to determine whether venue is supported by the federal venue statute, 28 U.S.C. § 1391.[87] Once a defendant has raised the improper venue issue by motion, the plaintiff bears the burden to establish that the chosen district is the proper venue.[88] When ruling on a Rule 12(b)(3) motion for improper venue, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."[89] Rule 12(b)(3) permits the Court to look at all evidence in the record beyond simply those facts alleged in the complaint and its proper attachments.[90]

## IV. Analysis

In the instant motion, Sutton argues that this case should be dismissed because it is not subject to personal jurisdiction in Louisiana and because the Eastern District of Louisiana is an improper venue for Plaintiff's claims against Sutton.[91] In opposition, Plaintiff argues Sutton freely consented to personal jurisdiction and venue in this Court by agreeing to the Subcontract's forum

---

[86] *Id.* (quoting *Burger King Corp.*, 471 U.S. at 472).

[87] *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S.Ct. 568, 577 (2013). Under 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a judicial district where any defendant resides, if all defendants are residents of the State where the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided by 28 U.S.C. § 1391, a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced.

[88] *Perez v. Pan American Life Ins. Co.*, 70 F.3d 1268, 1995 WL 696803, at *2 (5th Cir. 1995).

[89] *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448–49 (5th Cir. 2008).

[90] *Lighthouse MGA, LLC v. First Premium Ins. Grp., Inc.*, 448 Fed. App'x. 512, 514 (5th Cir. 2011).

[91] Rec. Doc. 7-1.

selection clause.[92] That clause states:

> This Agreement shall be governed by the law of the State of Louisiana. Subcontractor [Sutton] submits to the venue and jurisdiction of the Eastern District Court of Louisiana.[93]

Under Fifth Circuit precedent, parties to a contract may consent to personal jurisdiction and venue via a forum selection clause.[94] "A forum selection provision in a written contract is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable."[95] To determine whether a forum selection clause requires the parties to litigate in the clause's specific forum, a court must first determine whether the forum selection clause is mandatory or permissive.[96]

## A.    *Whether the Subcontract's Forum Selection Clause is Mandatory or Permissive*

The Fifth Circuit has distinguished between mandatory and permissive forum selection clauses.[97] A forum selection clause is mandatory "only if it contains clear language specifying that litigation must occur in the specified forum."[98] Put another way, a mandatory forum selection clause "must clearly demonstrate the parties' intent to make that jurisdiction *exclusive*."[99] By contrast, a permissive forum selection clause "is only a contractual waiver of personal jurisdiction

---

[92] Rec. Doc. 8 at 6.

[93] Rec. Doc. 8-2 at 10.

[94] *See, e.g.*, *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995).

[95] *Id.*

[96] *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).

[97] *Id.*

[98] *Id.*

[99] *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) (emphasis added).

and venue objections if litigation is commenced in the specified forum."[100]

Fifth Circuit caselaw helps illustrate the distinction between mandatory and permissive forum selection clauses. For instance, in *Argyll Equities LLC v. Paolino*, the Fifth Circuit deemed mandatory a forum selection clause that provided the following: "Borrower hereby consents to the exclusive jurisdiction of the courts sitting in Kendall County, Texas."[101] The Fifth Circuit reasoned that an agreement to submit to "the exclusive jurisdiction of the courts sitting in Kendall County" clearly demonstrated the parties' intent to make that jurisdiction exclusive.[102] By contrast, in *Caldas & Sons, Inc. v. Willingham*, the Fifth Circuit deemed permissive a forum selection clause that stated "[t]he law and courts of Zurich shall be applicable."[103] The Fifth Circuit reasoned that the "only thing certain about the clause . . . is that the parties consented to the personal jurisdiction of the Zurich courts."[104] "Beyond that, however, the language [does] not clearly indicate that the parties intended to declare Zurich to be the *exclusive* forum for the adjudication of disputes."[105]

In this case, the Subcontract's forum selection clause reads:

> This Agreement shall be governed by the law of the State of Louisiana. Subcontractor [Sutton] submits to the venue and jurisdiction of the Eastern District Court of Louisiana.[106]

The Subcontract's forum selection clause states only that Sutton "submits" to the venue and

---

[100] *Weber*, 811 F.3d at 768.

[101] *Argyll Equities LLC v. Paolino*, 211 F. App'x 317, 318 (5th Cir. 2006).

[102] *Id.* at 319.

[103] *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994).

[104] *Id.* at 128.

[105] *Id.* (emphasis added).

[106] Rec. Doc. 8-2 at 10.

jurisdiction of this Court.[107] It does not state, for example, that Sutton "exclusively submits" to this Court's jurisdiction. Simply put, the Subcontract's forum selection lacks the "exclusive" language required for a mandatory forum selection clause. This Court thus finds that the Subcontract's forum selection clause is permissive.

A permissive forum selection clause is "a contractual waiver of personal jurisdiction and venue objections if litigation is commenced in the specified forum."[108] Plaintiff commenced litigation in the Subcontract's specified forum—the Eastern District of Louisiana. Therefore, Sutton has contractually waived any personal jurisdiction or venue objections in this Court if the Subcontract's forum selection clause is enforceable and applies to Plaintiff's claims against Sutton.

**B.     *Whether the Subcontract's Forum Selection Clause is Valid and Enforceable***

The Court must now determine whether the Subcontract's forum selection clause is "valid and enforceable." In diversity cases, federal law applies when determining whether a forum selection clause is valid and enforceable.[109] Under federal law, a "forum-selection provision in a written contract is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable."[110]

The party resisting enforcement on "unreasonable" grounds bears a "heavy burden of

---

[107] *Id.*

[108] *Weber*, 811 F.3d at 768.

[109] *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) (citation omitted).

[110] *Kevlin Servs.*, 46 F.3d at 15. The Fifth Circuit has not drawn a "distinction between validity and enforceability." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 302 (5th Cir. 2016). Instead, the Fifth Circuit appears "to treat those words as synonyms in the forum-selection clause context." *Id.*

proof."[111] Nonetheless, unreasonableness "potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state."[112]

Here, Sutton must satisfy a "heavy burden of proof" to show enforcement of the Subcontract's forum selection clause would be "unreasonable." Sutton has not met its "heavy" burden. First, Sutton does not contend the forum selection clause entailed "fraud or overreaching."[113] Second, Sutton does not contend it will lose its "day in court" by litigating in this Court.[114] Although Sutton contends transferring this case to the Virgin Islands "would drastically decrease the burden and litigation expense on all parties," Sutton does not demonstrate how those additional expenses will deprive Sutton of its "day in court."[115] Third, the factor regarding Plaintiff's remedies is not applicable to Defendant Sutton. Finally, Sutton does not argue enforcement of the Subcontract's forum selection clause contravenes a "strong public policy" of the forum state.[116] Accordingly, because Sutton did not satisfy its "heavy" burden to show enforcement of the Subcontract's forum selection clause would be unreasonable, the Court

---

[111] *Haynsworth*, 121 F.3d at 963 (citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)).

[112] *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

[113] Rec. Doc. 7-1; Rec. Doc. 11.

[114] Rec. Doc. 7-1; Rec. Doc. 11.

[115] Rec. Doc. 11 at 6.

[116] Rec. Doc. 7-1; Rec. Doc. 11.

finds that the clause is valid and enforceable.[117]

### C. Whether the Subcontract's Forum Selection Clause Applies to Plaintiff's Counts

The Court must now determine whether the Subcontract's forum selection clause applies to Plaintiff's three claims against Sutton.[118] Sutton argues that the Subcontract's forum selection clause does not apply to Plaintiff's claims because each claim does not relate to the Subcontract.[119] In opposition, Plaintiff argues that each claim flows directly from the Subcontract and the Subcontract's forum selection clause applies to every claim.[120]

To decide whether the Subcontract's forum selection clause applies to each claim, the Court "must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clause."[121] The scope of a forum selection clause is not limited

---

[117] Instead of addressing the four factors, Sutton argues the four factors do not provide the appropriate standard. Rec. Doc. 11 at 6. According to Sutton, the appropriate standard is whether the exercise of specific jurisdiction over Sutton is fair and reasonable. *Id.* That argument is incorrect because the traditional specific-jurisdiction analysis is unnecessary when a party, like Sutton, consents to personal jurisdiction and venue in a forum selection clause. *See Kevlin Servs.*, 46 F.3d at 15. Sutton does not argue that it did not consent to the forum selection clause.

[118] A "choice-of-law analysis to determine what substantive law should guide this court's interpretation of the [forum selection clause] is proper under ordinary principles governing diversity litigation." *Weber*, 811 F.3d at 770. The Fifth Circuit has not followed that rule closely when interpreting forum selection clauses. *Id.* Instead, the Fifth Circuit has "interpreted [forum selection clauses] according to general common-law contract principles without addressing the precise source of law." *Id.* The "use of this general-law approach may be because, in this circuit and others, the enforceability of [a forum selection clause] is governed by federal law." *Id.* "But, as several circuits have explicitly recognized, the question of enforceability is analytically distinct from the issue of interpretation." *Id.*

Here, the Subcontract states: "This Agreement shall be governed by the law of the State of Louisiana." The parties do not raise the issue of whether Louisiana law applies when interpreting the Subcontract. "Under Louisiana law, a contract is the law between the parties, and is read for its plain meaning." *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 439 (5th Cir. 2002) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990) (per curiam)). Sutton does not argue that this Court should apply any law other than Louisiana law when interpreting the Subcontract. Moreover, the forum selection clause is clear, and Sutton does not argue otherwise. Thus, this Court will give the Subcontract's forum selection clause its plain meaning.

[119] Rec. Doc. 7-1 at 9–11.

[120] Rec. Doc. 8 at 13–14.

[121] *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998); *see also Claimserviceprovider, Inc. v. St. Paul Travelers Companies Inc.*, No. 06-2475, 2006 WL 2989240, at *4

to claims for breach of the contract that contains the forum selection clause.[122] Indeed, forum selection clauses extending "to all disputes that 'relate to' or 'are connected with' the contract are construed broadly."[123]

For example, in *Ginter Ballard v. Belcher, Prendergast & Laporte*, a forum selection clause provided the following: "Any action at law, suit in equity, or other judicial proceeding for the enforcement and/or breach of this contract, or any provision thereof, shall be instituted only in the 19th Judicial District Court of the State of Louisiana."[124] The Fifth Circuit broadly construed the forum selection clause to include more than breach of contract claims.[125] Indeed, the Fifth Circuit held that the plaintiff's tort theories fell within the scope of the forum selection clause—despite the forum selection clause referring only to "suits dealing with the enforcement or breach of contract"—because the tort theories were in essence complaining about the defendant's failure to fulfill certain contractual obligations.[126]

Similarly, in *Carnival Cruise Lines, Inc. v. Shute*, the United States Supreme Court considered a forum selection clause that provided the following: "[A]ll disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida."[127] With language such as "in connection

---

(E.D. La. Oct. 18, 2006).

[122] *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 445 (5th Cir. 2008).

[123] *Pinnacle Interior Elements, Ltd. v. Panalpina*, No. 3:09–CV–0430–G, 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010) (quoting *Pennzoil Exploration and Production Company v. Ramco Energy Limited*, 139 F.3d 1061, 1067 (5th Cir. 1998)).

[124] *Ginter ex rel. Ballard*, 536 F.3d at 445.

[125] *Id.*

[126] *Id.*

[127] *Carnival*, 499 U.S. at 587–88.

with" and "incident to this Contract," the Supreme Court deemed the forum selection clause broad enough to cover claims for breach of contract and negligence.[128]

In this case, the Court must review the language of the Subcontract's forum selection clause to determine whether Plaintiff's claims fall within the clause's scope. The Subcontract's forum selection clause states:

> This Agreement shall be governed by the law of the State of Louisiana. Subcontractor [Sutton] submits to the venue and jurisdiction of the Eastern District Court of Louisiana.[129]

Like the forum selection clauses in *Ginter* and *Carnival*, the Subcontract's forum selection clause is not limited to claims for breach of contract. In fact, the Subcontract's forum section clause is *broader* than the clauses in *Ginter* and *Carnival* because it lacks any restrictive language whatsoever. The clauses in *Ginter* and *Carnival* were restricted to claims "in connection with"[130] the contract or, alternatively, claims involving "enforcement and/or breach of this contract."[131] Here, the forum selection clause broadly states that Sutton "submits to the venue and jurisdiction of the Eastern District Court of Louisiana."[132] Because the Subcontract's forum selection clause is broader than the forum selection clauses in *Carnival* and *Ginter*, the Subcontract's forum selection clause must, at minimum, include breach of contract claims and tort claims relating to the Subcontract. Therefore, even if Plaintiff's claims sound in both contract and tort, the claims may nonetheless fall within the scope of the Subcontract's forum selection clause.

---

[128] *Id.* at 587–89.

[129] Rec. Doc. 8-2 at 10.

[130] *Carnival*, 499 U.S. at 587.

[131] *Ginter ex rel. Ballard*, 536 F.3d at 445.

[132] Rec. Doc. 8-2 at 10.

In Count I, Plaintiff alleges Sutton violated the Subcontract and Virgin Island lien law capping the amount of construction liens in particular contracts.[133] Plaintiff alleges that under the Subcontract "Sutton is entitled only to receive payment for costs to 'furnish labor, non-bulk materials, and equipment' as contemplated by the Subcontract."[134] Plaintiff also alleges Sutton is owed only $159,165.95 for the cost of labor and materials.[135] Plaintiff thus concludes the Subcontract limits Sutton's potential claims to $159,165.95.[136] Despite that limitation, Sutton allegedly filed liens exceeding $1,600,000 in order to recover expenses that do not involve the cost of labor and materials.[137]

Plaintiff explicitly states that "[t]he lien amounts filed by Sutton grossly exceed those limits permitted under [Virgin Island law]" because the liens exceed the amounts to which Sutton is entitled under the Subcontract.[138] Therefore, because Plaintiff's allegations in Count I relate to the Subcontract, Count I falls within the scope of the Subcontract's broad forum selection clause.

In Count II, Plaintiff alleges "a genuine and bona fide dispute and an actual controversy and disagreement [exists] between Citadel and Sutton regarding the payment terms under the *Subcontract* and the rights and remedies available, if any, to Sutton for nonpayment."[139] Count II concerns rights and remedies under the Subcontract and is clearly related to the Subcontract. Accordingly, Count II easily falls within the scope of the broad language in the Subcontract's

---

[133] Rec. Doc. 1 at 11–12.

[134] *Id.* at 12.

[135] *Id.*

[136] *Id.*

[137] *Id.*

[138] *Id.* at 13.

[139] Rec. Doc. 1 at 14.

forum selection clause.[140]

In Count III, Plaintiff seeks to enjoin Sutton from "(1) initiating any legal action to foreclose on the construction liens, (2) bringing suit against the Bonds in place, and (3) placing additional liens on EHRVI properties for which [Plaintiff] is responsible under the Master Subcontract."[141] The Court agrees with Plaintiff's assertion that these three requests derive from the Subcontract.[142] Indeed, Plaintiff's request to enjoin Sutton from "foreclose[ing] on the construction liens" entails the same liens that purportedly breach the Subcontract. Moreover, the Bonds in place are at issue only because Sutton allegedly has not been paid under the Subcontract. Finally, Plaintiff's request to enjoin Sutton from placing additional liens on properties for which Plaintiff is responsible under the Master Subcontract is related to the Subcontract. The Subcontract explicitly adopts the Master Subcontract. Therefore, Count III's request for injunctive relief easily falls within the scope of the broad language in the Subcontract's forum selection clause.[143]

---

[140] Sutton argues that Count II seeks relief under the Master Subcontract, which includes a forum selection clause requiring disputes relating to the Master Subcontract to be litigated in the State in which the project is located (here, the Virgin Islands) or Virginia. Rec. Doc. 11 at 4. Sutton argues the Subcontract adopts the Master Subcontract and, therefore, Plaintiff is bound by the Master Subcontract's forum selection clause. *Id.*

Sutton's argument is not persuasive. The Subcontract includes a provision stating that the Subcontract controls when in conflict with the Master Subcontract. Rec. Doc. 8-2 at 5. Under the Subcontract, Sutton submitted to jurisdiction in the Eastern District of Louisiana. *Id.* at 10. Yet, under the Master Subcontract, disputes relating to the Master Subcontract must be litigated in the Virgin Islands or Virginia. Rec. Doc. 7-2 at 8. Here, Plaintiff's claims involve both the Master Subcontract and the Subcontract. Because the Subcontract permits jurisdiction in the Eastern District of Louisiana, and the Master Subcontract permits jurisdiction *only* in the Virgin Islands and Virginia, the two forum selection clauses are in conflict. Consequently, the Subcontract's forum selection clause controls.

[141] Rec. Doc. 1 at 16.

[142] Rec. Doc. 8 at 14.

[143] Sutton argues that the Subcontract's forum selection clause "does not state that TJ Sutton consents to venue and jurisdiction in this Court for any and all claims that may arise under the contract or the performance of work under the contract." Rec. Doc. 11 at 4. Therefore, according to Sutton, "there is nothing in the provision that would place TJ Sutton on notice that a court in Louisiana may enjoin it from taking

## V. Conclusion

For the foregoing reasons, the Court finds that Plaintiff has met its burden of establishing that this Court may exercise personal jurisdiction over Sutton in the present matter and that venue is appropriate in the Eastern District of Louisiana. Accordingly,

**IT IS HEREBY ORDERED** that the Sutton's "Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue" is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __4th__ day of November, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

action in the Virgin Islands to protect and preserve its rights." *Id.*

Sutton correctly states that the Subcontract's forum selection clause does not have language encompassing "any and all claims that may arise under the contract." But Sutton's point hurts its own argument. The Subcontract's forum selection clause is broader than a provision limited to "any and all claims that may arise under the contract" because it lacks the exact language mentioned by Sutton. Indeed, the Subcontract simply states that Sutton "submits to the venue and jurisdiction of the Eastern District Court of Louisiana," which is not necessarily limited to claims involving the Subcontract. Yet the Court need not decide precisely how broad the Subcontract's clause is because each claim, as demonstrated above, is at minimum related to the Subcontract.